UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

MABEL ARREDONDO,

        Plaintiff,

v.

PRESTIGE SOLUTIONS, LLC, a California Corporation and JAVIER MEDINA,

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

EP22CV0388

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant PRESTIGE SOLUTIONS LLC, ("PRESTIGE") is a corporation organized and existing under the laws of California with a physical address of 16738 Lakeshore Drive, Suite #H291, Lake Elsinore, CA 92530 and can be served via registered agent Registered Agents, Inc., at 1401 21st, Suite R., Sacramento, CA 95811.

3. Defendant JAVIER MEDINA ("MEDINA") is a natural person, resident of California, and upon information and belief is the primary owner and manager of PRESTIGE, and can be served at 29453 Tours Street, Lake Elsinore, CA 92530.

1

## JURISDICTION AND VENUE

4. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

5. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a

2

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013 when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1

4

(2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code § 302.101**

21. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

22. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

23. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

# FACTUAL ALLEGATIONS

24. At all times material hereto Plaintiff's number ending in 8219 was successfully registered on the Do-Not-Call Registry since March 31, 2022.

25. Since at least 2016 Defendants Prestige Solutions, LLC and Javier Medina have facilitated, marketed, and enabled "student loan forgiveness" activities and collection of payments in advance of services rendered in violation of the Telemarketing Sales Rules (TSR). 16 C.F.R. § 310.4 (a)(5)(i).

26. Defendant Medina is the officer of Prestige Solutions, LLC.

27. Plaintiff received multiple calls from a variety of spoofed caller IDs that contained a prerecorded message and were initiated using an automated telephone dialing system. The calls were on behalf of Defendant Prestige.

28. On March 17, 2022, Plaintiff received a phone call from phone number 904-364-0156. Plaintiff did not answer the phone call and it went to voicemail. Plaintiff listened to the voicemail and the following prerecorded voice message was played:

> "Yes, hi this is Isaac Lopez with the student services department. We are now in March 2022, and I'm following up in regards to your student loan balance. I have been trying to reach you because you are eligible to have some, or all your student loans forgiven due to recent changes. However, it is urgent that I speak with you as soon as possible before these programs change. You can reach me directly at 888-211-8530. And again this is Isaac Medina and I look forward to speaking with you. Have a blessed day."

29. On May 1, 2022, Plaintiff received another phone call from phone number 513-270-4656. Plaintiff did not answer the phone call and it went to voicemail. Plaintiff listened to the voicemail and the following prerecorded voice message was played:

> "Yes, hello this is Mr. LOpez with the student services department. We are now in May 2022, and I'm following up in regards to your student loan balance. I have been trying to reach you because you are eligible to have some, or all your student loans forgiven due to recent changes. However, it is urgent that I speak with you as soon as possible before these programs change. You can reach me directly at 888-212-0773. And again, this is

Isaac Lopez and I look forward to speaking with you. Have a blessed day."

30. Plaintiff became aggravated from the constant phone calls and voicemails that were being left on her personal cell phone. Plaintiff called the number that was left on the voicemail and was connected to a prerecorded message soliciting student loan forgiveness. Plaintiff pressed "four" and was connected to "Isaac Lopez" ("Lopez")who said he was from "Student Services." Lopez solicited Plaintiff for student loan forgiveness.
Lopez asked Plaintiff personal questions in order to qualify Plaintiff for "student loan forgiveness." During the course of this conversation the representative verified Plaintiff's DOB, social security number and email address in order to access Plaintiff's student loan account.

31. Lopez then reset Plaintiff's password and had an email sent to Plaintiff's email and instructed Plaintiff to provide him with the code in order to access Plaintiff's student loan account. Lopez a verified Plaintiff's student loans and advised Plaintiff that she indeed did qualify for an "IBR" program and that it was a "forgiveness program" where Plaintiff would pay $100.00 for the term of 8 months for document preparation services. He also advised that after the 8-month term the remaining balance owed to the Department of Education would be "forgiven"

32. On May 2, 2022, Lopez emailed Plaintiff a contract to sign from rightsignature.com memorializing the conversation with Plaintiff.

33. On June 13, 2022, Plaintiff received another phone call from phone number 910-535-6130. Plaintiff did not answer the phone call and it went to voicemail. Plaintiff listened to the voicemail and the following prerecorded voice message was played:

> "Yes, hello this is Isaac Lopez with the student services department. We are now in June 2022, and I'm following up in regards to your student loan balance. I have been trying to

reach you because you are eligible to have some, or all your student loans forgiven due to recent changes. However, it is urgent that I speak with you as soon as possible before these programs change. You can reach me directly at 888-212-0773. And again, this is Isaac Medina and I look forward to speaking with you. Have a blessed day."

34. This was the same exact prerecorded voice message call Plaintiff had previously received from Defendants.

35. Table below displays calls made to Plaintiff by defendants:

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 03/17/2022 | 1:07 PM | 904-3640156 | Voicemail containing prerecorded voice message soliciting student loan forgiveness. |
| **2.** | 05/02/2022 | 10:55 AM | 513-270-4656 | Voicemail containing prerecorded voice message soliciting student loan forgiveness. |
| **3.** | 05/02/2022 | 11:40 AM | 888-211-8530 | Live call with Lopez |
| **4.** | 05/02/2022 | 4:32 PM | 888-211-8530 | Live call with Lopez |
| **5.** | 06/13/2022 | 12:23 PM | 910-535-6130 | Voicemail containing prerecorded voice message soliciting student loan forgiveness. |

36. Defendants collectively knowingly and willfully mislead Plaintiff with respect to the forgiveness of her student loans.

37. On October 27, 2022, Plaintiff searched the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and verified that Defendants do not and have not ever had a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

8

38. Defendants initiated numerous unsolicited telephone calls, including robocalls with prerecorded voice messages, made unlawful telemarketing sales pitches regarding student loan forgiveness, misrepresented themselves as federal employees and/or agents, unlawfully collected payments upfront, unlawfully collected Plaintiff's personal information, such as social security number, email address, and home address.

39. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

40. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

41. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

42. No emergency necessitated the calls.

43. None of the defendants ever sent Plaintiff any do-not-call policy. Plaintiff sent an internal do-not-call policy request to support@myprestigeservices.org on September 21, 2022.

44. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

45. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

46. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## DEFENDANT JAVIER MEDINA IS PERSONALLY LIABLE

47. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

48. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

49. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and

10

willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

50. The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

51. At all times material to the Complaint, Defendant Medina has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant PRESTIGE, including the acts or practices set forth in this Complaint.

11

52. Defendant Medina is the principal director and officer of Defendant PRESTIGE and control the day-to-day operations of PRESTIGE and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit "student loan forgiveness" and "student loan consolidation" services.

53. Defendant Medina approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefit.

54. Defendant Medina personally directed the phone calls be placed to student loan debt holders.

55. Defendants collect their fees for the "student loan forgiveness" and "student loan consolidation" through credit card payments and authorized checks processed prior to providing any services. This is an unlawful payment processing scheme that collects payments in advance of services rendered in violation of the TSR. 16 C.F.R. § 310.2(cc) and 16 C.F.R. § 310.4(a)(5)(i).

56. Defendant Medina knew the collection of fees before rendering service illegal.

57. Defendant Medina knowingly and willfully ignores the law. Defendant Medina solicits the services of student loan forgiveness and collect money upfront before any services are performed or any debts are forgiven. The violations are the direct result of the instructions Defendants have given to their agents, employees, solicitors, salespersons, and others that carry out their schemes.

58. Defendant Medina is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

59. Defendant Medina is well aware Defendant's conduct violated the TCPA and Tex. DPTA

and refused to alter their behavior. Defendant is the sole director of PRESTIGE and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendant breaks the law with his eyes and pocketbooks wide open.

60. Defendants Medina and PRESTIGE should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

61. Defendant Medina should be held personally liable because to do otherwise would simply allow Medina to simply dissolve PRESTIGE and set up a new corporation and repeat his conduct. This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

62. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

63. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

64. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

65. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

66. The Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

13

### Plaintiff's cell phone is a residential number

67. The calls were to Plaintiff's cellular phone ending in 8219 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

68. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b). The calls by the Defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

69. The calls by the Defendants violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

70. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

71. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## I. FIRST CLAIM FOR RELIEF

### Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)

### (Against All Defendants)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent.

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF:

**Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)**

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

### (Against All Defendants)

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

3. Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

4. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

### IV. FOURTH CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without her prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## V. FIFTH CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 302.101

1. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

3. Plaintiff is entitled to an award of up to $5,000 in damages for each violation of Texas Business and Commerce Code 302.302(a).

4. Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. Tex. Bus. Com. Code 302.302(d).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for five (5Medi) calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Plaintiff of damages, as allowed by law under the TCPA;

H. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

October 28, 2022,                          Respectfully submitted,

*Mabel Arredondo*
MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219
Mabel.arredondo22@gmail.com